UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Maurice Dunbar, | ) C/A No 2:10-1775-HMH-BHH |
| Plaintiff, | ) |
| vs. | ) Report and Recommendation |
| James Metts, Living Person in charge of LCDC; City Cousel or Person who oversee the courts, living person in charge, | ) |
| Defendants. | ) |

Maurice Dunbar (Plaintiff), who is in the custody of the South Carolina Department of Corrections in Evans Correctional Institution, in Bennettsville, South Carolina, proceeding *pro se* and *in forma pauperis*, brings this civil rights action naming as Defendants, "James Metts, Living Person in charge of LCDC," and "City Cousel [sic] or Person who oversee the courts, living person in charge." Plaintiff's Complaint also refers to the second named Defendant in this case as "Lexington County Court house" and/or "Lexington County Judicial." *See* ECF No. 22, p. 1-2; ECF No. 26. Plaintiff's Complaint is liberally construed as an attempt to assert a claim for monetary damages under 42 U.S.C. § 1983.[1] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the

---

[1] Not a source of substantive rights itself, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using their badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996).

1

undersigned United States Magistrate Judge is authorized to review *pro se* complaints and petitions for relief and submit findings and recommendations to the District Court. *See* 28 U.S.C. § 1915. Title 28 U.S.C. § 1915A also requires review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

The Complaint in this case, as originally filed on July 12, 2010, was styled as a *pro se* "class action" and signed by Plaintiff and fifty (50) other individuals who were all local prisoners of the Lexington County Detention Center (LCDC) at the time. *See* ECF No. 1. The Complaint was not submitted on a prisoner complaint form, and none of the prisoners who signed the Complaint filed a motion to proceed *in forma pauperis* or submitted any proposed service documents. On December 6, 2010, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, found that the interests of justice, the provisions of the Prison Litigation Reform Act (PLRA) and controlling case law, and the potential individual claims of the multiple signatories, required that all of the prisoners who signed the original Complaint, with the exception of the first named prisoner, *i.e.* Plaintiff, must be dismissed from the case and must be notified of their right to file their own individual cases seeking redress for alleged violations of their own personal rights. Judge Herlong ordered that, because the case could not proceed with multiple plaintiffs as a class action, the case would, instead, be maintained as an individual prisoner civil rights action filed solely by Plaintiff. *See* ECF No. 9, p.4. Because the case was not in proper form for evaluation and service at that time, Plaintiff was given twenty-one (21) days to bring his case into proper form by submitting a completed Court-approved complaint form for a prisoner civil rights action, to be filed as an attachment to the original Complaint, in order to preserve issues

2

raised in the case and give liberal construction to the pleadings. Plaintiff was ordered to "name the defendants he wishes to sue; discuss only those facts relating to how the alleged prison conditions and alleged violations of federal rights by each defendant have affected or injured Plaintiff Dunbar, himself; and specifically ask for relief for Plaintiff Dunbar's own individual injuries." Plaintiff was also ordered to pay the required filing fee or to submit a motion to proceed *in forma pauperis*, and to submit proposed service documents. *See* ECF No. 9, p. 5-6. On January 3, 2011, Plaintiff substantially complied with the Court's order and this case is now in proper form. *See* ECF Nos. 22, 23, 24, 26.

However, Plaintiff has failed to allege sufficient specific facts against Defendant "James Metts, Living Person in charge of LCDC" to state a plausible claim for violation of a constitutionally protected liberty interest, and Defendant "City Cousel or Person who oversee the courts, living person in charge" (alternately referred to by Plaintiff as "Lexington County Court house" and/or "Lexington County Judicial") is not a "person" acting "under color of state law," and thus not amenable to suit under § 1983. In addition, James Metts, in his official capacity as Sheriff of Lexington County, has Eleventh Amendment immunity from a civil rights claim for monetary damages. Furthermore, the City Council of Lexington is not responsible for the administration and operation of the Lexington County Circuit Court, and the Lexington County Circuit Court, as an integral part of the unified court system of the State of South Carolina, has Eleventh Amendment immunity from suit under § 1983. Therefore, Plaintiff's Complaint should be summarily dismissed, without prejudice and without issuance and service of process, because it is frivolous, fails to state a claim for which this Court may grant relief, and seeks monetary relief against Defendants who are immune from such relief.

## *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915. This review has been conducted in light of the following precedents: *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995) (en banc); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton*, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke*, 490 U.S. 319; *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).

This court is required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *id.; Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449

4

U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Moreover, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009)(outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). Although the court must liberally construe a *pro se* complaint, the United States Supreme Court has recently made clear that, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555. Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.[2]

---

[2] Although the *Iqbal* Court was addressing pleading standards in the procedural context of a Rule 12(b)(6) motion, the Court finds that those standards also apply in the Court's initial screening of a complaint pursuant to §§ 1915(e)(2) and 1915A, since *Iqbal* discusses the general pleading standards of Rule 8, which apply in all civil actions.

*Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 570.  The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions.  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

Expounding on its decision in *Twombly*, the United States Supreme Court stated in *Iqbal*:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 556, 557, 570) (citations omitted); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003).

## BACKGROUND

Plaintiff's Complaint alleges that:

Jame Metts who own and oprates LCDC, who knowly and encourage his employess to engage in the exercise of Dening a detainee - incareted within there jail, there rights as a citizen of the United States, Inmate are denied from recieving the knodgeledge to fight for their freedom, giving lenthly sentence's railroaded and giving time, with no charge of equal rights, as the

---

*Iqbal*, 129 S. Ct. at 1949-51.  Moreover, §§ 1915(e)(2) and 1915A(b) permit *sua sponte* dismissal of a complaint that fails to state a claim upon which relief can be granted, which is essentially the same standard found in Rule 12(b)(6).  *See McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009)("When the word 'dismissed' is coupled with the words '[for] fail[ure] to state a claim upon which relief may be granted,' the complete phrase has a well-established legal meaning.").

> law state and defanett isn't guilty of nothing, but within this county and state, a man is (guilty) before proven.
>
> Inmate's are denied to receieve any type of books or literature dealing with the African American culture, or African-American television show's that come on the television, they state the movies are not in compliance, meaning African American Movies, which clearly shows discrimation and racial animus - which violates the right's of African American and Hispanic within that jail.

ECF No. 22, p. 3.

> Plaintiff further alleges that:
>
> The Living person in charge of overseeing the courts Lexington County Judical Center, show's racial decrimation to African American and Hispanics, on a daily basic, the same charge a African American commit there sentence would be appromatly 5 to 15 year longer. If the bond sentencing was looked into it would show how African-American are being targeted by Lexington County and place in a possition with no help, along with repretation who claim to fulfil the law but, main purpose is to make a person plea to clear the book, as a black man goes to jail and a white man get probation. the Bond setting and sentencing is uncontiutional and not right, and by the detainee or inmated denial of knowledge or case law's to defend for themself, this problem will never resolve.

ECF No. 22, p. 4.

In his Complaint, Plaintiff states that he seeks "relief of 1.5 million or more against Jame Metts on my personal behalf." ECF No. 22, p. 5. In an attachment to his Complaint, filed on January 3, 2011, Plaintiff states that he seeks "from Jame Metts and Lexington County Judicial Defendants" relief of "2.5 million dollars." ECF No. 26, p. 1.

## DISCUSSION

In order to state a plausible claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Monroe v. Pape*, 365 U.S. 167 (1961); *see generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

7

*Procedure* § 1230 (2002). It is well settled that only "persons" may act under color of state law, therefore, a defendant in a § 1983 action must qualify as a "person." For example, this District Court and several courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law. *See McCray v. Berkeley County Detention Center,* C/A No. 1:10-1615-RMG-SVH, 2010 U.S. Dist. LEXIS 112454 (D.S.C. Aug. 26, 2010) accepted by, claim dismissed by, dismissed without prejudice by *McCray v. Berkeley County Det. Ctr.*, 2010 U.S. Dist. LEXIS 112358 (D.S.C., Oct. 21, 2010)(Berkeley County Detention Center is not a "person," and therefore not amenable to suit under 42 U.S.C. § 1983); *Burnett v. SCDC*, 2010 U.S. Dist. LEXIS 134560 (D.S.C., Nov. 29, 2010) adopted by, dismissed by, in part by *Burnett v. SCDC*, 2010 U.S. Dist. LEXIS 134578 (D.S.C., Dec. 20, 2010)("SCDC, South Carolina Department of Corrections Kirkland R&E Correctional Inst." is not a "person" subject to suit); *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); *Preval v. Reno*, 2000 U.S. App. LEXIS 465 at *3 (4th Cir. 2000),("The [district] court also properly determined that the Piedmont Regional Jail is not a 'person,' and is therefore not amenable to suit under 42 U.S.C. § 1983, and we affirm the dismissal of the claims against the jail for that reason."); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301(E.D.N.C. 1989)("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Additionally, use of the term "staff" or the equivalent as a name for alleged defendants, without the naming of specific staff members, is not adequate to state a claim against a "person" as required in section 1983 actions. Plaintiff must identify the person or persons who purportedly violated his rights. *See Barnes v. Baskerville Corr. Ctr. Med. Staff,* Civil Action

No. 3:07CV195, 2008 U.S. Dist. LEXIS 48726 at * 2 (E.D. Va. June 25, 2008), *Martin v. UConn Health Care*, No. 3:99CV2158 (DJS), 2000 WL 303262, *1 (D. Conn. Feb. 09, 2000). Defendant "City Cousel or Person who oversee the courts, living person in charge," alternately referred to by Plaintiff as "Lexington County Court house," and/or "Lexington County Judicial" is an inanimate entity, a facility, and/or a generic term for an unidentified and unnamed individual. It is not a specific "person" subject to suit under 42 U.S.C. § 1983.

Moreover, the City of Lexington or the Lexington City Council cannot be held responsible for actions taken by the Municipal Court for the City of Lexington, the Magistrate's Court for Lexington County, and the Court of General Sessions (Circuit Court) for Lexington County. It can be judicially noticed that, in South Carolina, a county's authority over courts within its boundaries was abolished when Article V of the Constitution of the State of South Carolina was ratified in 1973. *See* Act No. 58, 1973 S.C. Acts 161; Article V, Section 1 of the Constitution of the State of South Carolina; and *State ex rel. McLeod v. Civil and Criminal Court of Horry County*, 265 S.C. 114, 217 S.E.2d 23, 24 (1975).[3] Under the current version of Article V, Section 1, the Supreme Court of South Carolina, not the City of Lexington or Lexington County, retains the *sole* authority to supervise magistrates' courts in Lexington County, municipal courts in Lexington County, and the Circuit Court for Lexington County. *See Spartanburg County Dept. of Social*

---

[3] County courts in the State of South Carolina no longer exist. Section 22 of Article V of the Constitution of the State of South Carolina (1973) allowed "any existing court" on the date of ratification to continue operating until Article V was fully implemented. *See State ex rel. McLeod v. Civil and Criminal Court of Horry County*, 217 S.E.2d at 24 ("The Horry County Court is one of the courts continued in existence solely by virtue of the provisions of Section 22 of Article V.").

*Services v. Padgett*, 296 S.C. 79, 370 S.E.2d 872, 875-876 & n. 1 (1988). By virtue of Article V, the City of Lexington nor the County of Lexington exercise administrative or supervisory authority over municipal courts, magistrates' courts, or courts of the State of South Carolina located within the geographical boundaries of Lexington County. Article V, § 1 of the South Carolina Constitution mandates a unified judicial system. Section 4 of the Judicial Article designates the Chief Justice of this Court as the administrative head of the unified judicial system and directs that this Court make rules governing the administration of all courts in this state. Further, this section provides that this Court shall promulgate rules governing practice and procedure in all courts subject to the statutory law.[4] In addition, the Circuit Court for Lexington County, as an integral part of South Carolina state government, has Eleventh Amendment immunity from a § 1983 suit.[5]

Consequently, Defendant "City Cousel or Person who oversee the courts, living person in charge," alternately referred to by Plaintiff as "Lexington County Court house," and/or "Lexington County Judicial," should be dismissed from this civil rights action

---

[4] To the extent that Plaintiff's Complaint could be very liberally construed as intending to name as "the Person who oversee the courts, living person in charge," the Chief Justice of the Supreme Court of South Carolina, neither a state, a state agency or department, or its officials, acting in their official capacities, are "persons" under § 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

[5] *See Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997). While the United States Congress can override Eleventh Amendment immunity through legislation, Congress has not overridden the states' Eleventh Amendment immunity in § 1983 cases. *See Quern v. Jordan*, 440 U. S. 332, 343 (1979). In addition, a State may consent to a suit in a federal district court. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, (1984). However, the State of South Carolina has not consented to such actions. *See* S.C. Code Ann. § 15-78-20(e); *Hall v. County of Carolina Dep't of Corr.*, C/A No. 2:09-3106-TLW-RSC, 2009 U.S. Dist. LEXIS 125156 at *7-9 (D.S.C. Dec. 21, 2009) accepted by, dismissed without prejudice by *Hall v. County of Carolina Dep't of Corr.*, 2010 U.S. Dist. LEXIS 14922 (D.S.C. Feb. 18, 2010).

because Lexington City Council is not a "person" and is not responsible for the alleged violations of Plaintiff's rights, the Lexington County Courthouse is not a "person" within the meaning of § 1983, and the Lexington County Circuit Court is immune under the Eleventh Amendment from a § 1983 lawsuit.

Plaintiff's Complaint attempts to allege that Defendant "James Metts, Living Person in charge of LCD," who is the Sheriff of Lexington County, violated Plaintiff's constitutional rights while he was incarcerated in the Lexington County Detention Center (LCDC) by not permitting prisoners to possess African American literature, to watch African American television shows or movies, or to have access to the library. *See generally* ECF No. 1, p. 1-3. Liberally construed, the Complaint attempts to allege Defendant Metts's violation of 42 U.S.C. § 1981, 1982, 1983, and 1985 as a result of Defendant Metts's racial discrimination or racial animus. However, the Complaint fails to allege any facts which state a plausible claim that Defendant Metts violated a constitutionally protected liberty interest of Plaintiff. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling her to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)(quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557).

Plaintiff was directed in this Court's "proper form" order, issued on December 6, 2010, to show facts in his Complaint that relate to how the alleged prison conditions and

11

alleged violations of federal rights by each Defendant have affected or injured Plaintiff, himself. However, it is impossible to decipher from the scant, conclusory allegations contained in Plaintiff's Complaint any allegations of specific discriminatory acts taken by Defendant Metts against Plaintiff, which plausibly constitute a violation of one of Plaintiff's own, individual, constitutionally protected liberty interests. Plaintiff does not allege any specific time(s) or date(s) on which he, himself, was ever personally denied permission, by Defendant Metts or by any other specifically-named LCDC staff person(s), to receive any specific African-American book(s), or to watch any specific African-American television show(s) or movie(s). Plaintiff's Complaint merely makes a general, unsupported allegation that "inmates are denied to receive any type of books or literature dealing with the African American culture, or African-American television show's that come on the television." ECF No. 23, p. 4. Plaintiff then makes the conclusory allegation that because "they state the movies are not in compliance, meaning African American movies" that it "clearly shows discrimination and racial animus." ECF No. 22, p. 4. This court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006).

There are also no allegations in the Complaint that the only situation described with any particularity by Plaintiff, *i.e.* the determination(s), made by unidentified LCDC staff, that unidentified African-American movie(s) were not in compliance - presumably with LCDC rules and regulations, was not based on the enforcement of an LCDC restriction that was rationally related to a legitimate penological interest. In *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), the United States Supreme Court recognized that pretrial detainees retain

constitutional protections despite their confinement. Nevertheless, "[a] detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Bell*, 441 U.S. at 546. A detainee's constitutional rights may be restricted in the interest of prison security. The United States Supreme Court subsequently held in *Turner v. Safley*, 482 U.S. 78, 89 (1987), that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *See Hause v. Vaught*, 993 F.2d 1079 (4th Cir. 1993)(complete ban on receipt of incoming publications in a short-term pretrial detainee setting upheld as within scope of penological interest rights of jailers)(citing *Turner*).

Moreover, Defendant Metts, in his official capacity as Sheriff of Lexington County, is immune from this lawsuit. As noted above, the Eleventh Amendment to the United States Constitution bars suits brought against the states and their integral parts by the states' own citizens and citizens of other states. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *see also Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997)("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a state is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). *See Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)("The

bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances."). Article V, section 24 of the South Carolina Constitution specifically provides for the election of a sheriff in each county: "There shall be elected in each county by the electors thereof a clerk of the circuit court, a sheriff, and a coroner; and in each judicial circuit a solicitor shall be elected by the electors thereof." Sheriff's departments in South Carolina are considered state agencies, not municipal departments, and sheriffs are considered state officials. *See* S.C. Code Ann. § 23-13-550; 1975 S.C.Att'y.Gen'l.Op. No. 47 (January 22, 1975); *Comer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996)(suit against Sheriff of Greenville County: "Sheriff Brown is an arm of the State."); *Cone v. Nettles*, 417 S.E.2d 523 (S.C. 1992)(stating that the sheriff and his employees are state officials); *Gulledge v. Smart*, 691 F. Supp. 947, 954 (D.S.C. 1988)(holding that both sheriffs and deputy sheriffs are agents of the State and immune from suit).

There are no specific factual allegations in Plaintiff's Complaint that could be, even liberally, construed to support any basis for the jurisdiction of this Court over Plaintiff's claim against Defendant "James Metts, Living Person in charge of LCDC." In sum, even under the lenient standards by which *pro se* pleadings are reviewed, the Complaint in this case, as to Defendant Metts, is frivolous, fails to state a cause of action upon which a federal court may grant relief and, seeks monetary relief against this Defendant who, in his official capacity, has immunity from such relief.

## RECOMMENDATION

Accordingly, it is recommended that the Complaint in the above-captioned case be summarily dismissed, *without prejudice* and without issuance and service of process. *See* 28 U.S.C. § 1915(e)(2)(B)(i),(ii),(iii)(frivolous or malicious; fails to state a claim on which

relief may be granted; seeks monetary relief against a defendant who is immune from such relief); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

    Plaintiff's attention is directed to the important notice on the next page.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

March 31, 2011<br>
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The petitioner is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk of Court**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).